**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 24-80980-CV-MIDDLEBROOKS**


SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

WELLS REAL ESTATE INVESTMENT, LLC,
JANALIE C. JOSEPH
A/K/A JANALIE C. BINGHAM, and
JEAN JOSEPH,

      Defendants.

_____/

ANDRES RIVERO, as Receiver of          ANCILLARY CASE NO. _____
WELLS REAL ESTATE INVESTMENT, LLC,
*et al.*,

      Plaintiff,
v.

EMPIRE INSURANCE SERVICES, INC.,

      Defendant.

_____/

## COMPLAINT

Andres Rivero, the court-appointed Receiver (the "Receiver") of Wells Real Estate

Investment, LLC ("Wells"), and the Relief Defendants[1] (Wells and the Relief Defendants are

---

[1] "Relief Defendants" refers to: Cambridge Real Estate Management, LLC; 60 Yacht Club, LLC; 112 South Olive, LLC; 791 Parkside Home, LLC; 910 Parkside, LLC; 930 Parkside, LLC; 976 Palm Beach Square, LLC; 1070 Boca Raton Square, LLC; 2082 Paradise Palm, LLC; 2295 Corporate Blvd LLC; 4050 NW, LLC; 4100 Hospital Office, LLC; 4800 Federal, LLC; 7352 Valencia, LLC; 7483 Valencia, LLC; Boca Deerfield Properties, LLC, Daybreak Home, LLC; Globe Offices, LLC; Globe Property Offices, LLC; LW Square Office, LLC; Martiniqueâ

collectively referred to as "Receivership Entities") in the above-captioned enforcement action, files this Complaint against Defendant Empire Insurance Services, Inc. ("Empire"), and states:

## PROCEDURAL HISTORY

1. On August 12, 2024, the Securities and Exchange Commission (the "SEC") filed a Complaint for Injunctive and Other Relief against the Receivership Entities, Bingham, and Joseph (collectively, the "Receivership Defendants"), in the Southern District of Florida commencing the above-styled enforcement action (the "SEC Action"). ECF No. 1. On the same day, the SEC also filed an Emergency *Ex Parte* Motion and Memorandum of Law for Appointment of Receiver (the "Receiver Motion") [ECF No. 5], and an Emergency *Ex Parte* Motion and Memorandum of Law for Asset Freeze and Other Relief (the "Asset Freeze Motion") [ECF No. 6].

2. On August 14, 2024, the Court entered a Sealed Order Granting the SEC's Receivership Motion (the "Receivership Order") [ECF No. 11], appointing Mr. Rivero as Receiver over the Receivership Entities. and an Order Granting the SEC's Asset Freeze Motion [ECF No. 12].

3. The Receivership Order requires the Receiver to, among other things, take possession, custody and control of all the Receivership Entities' assets, establish control of the Receivership Entities' businesses, prevent dissipation of the Receivership Entities' funds or assets; collect funds due to the Receivership Entities, obtain documents and records pertaining to the Receivership Entities' assets, transactions and business operations, and perform all acts necessary to preserve the value of the Receivership Estate. *See* Receivership Order § II, ¶7.

---

Investments LLC a/k/a Martinique's Investments LLC; Oakland Land Property, LLC; and South Olive Office, LLC.

4. The Receiver is authorized to, among other things, bring any action which, prior to entry of the Receivership Order, could have been brought by the Receivership Defendants' officers, directors, partners, managers, trustees, and agents. *See* Receivership Order, § II, ¶ 7(I).

5. Additionally, in furtherance of the Receiver's obligation to preserve Receivership assets, the Receivership Order grants the Receiver authority to "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property." Receivership Order at § X, ¶ 36.

6. Accordingly, the Receivership Order authorizes and directs the Receiver to bring fraudulent transfer claims (such as this one), and such other claims as the Receiver sees fit, to preserve and increase the value of the Receivership Estate on behalf of the Receivership Entities.

## THE PARTIES

### The Receiver

7. Mr. Rivero was appointed as Receiver over the Receivership Entities in the SEC Action. Mr. Rivero brings this action in his capacity as Receiver, under the authority granted to him by this Court in the SEC Action, on behalf of the Receivership Entities, which have been damaged by Empire's conduct.

### The Defendant

8. At all times, Defendant Empire is a corporation organized under the laws of the State of Florida with a principal place of business in Hallandale, Florida.

9. Empire is in the business of providing insurance related services to real estate investors, landlord, and developers.

3

**JURISDICTION AND VENUE**

10.     This action is related to the claims in the SEC Action, over which this Court has original jurisdiction pursuant to Title 28, United States Code, Section 1331, in that this action forms "part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  Pursuant to the principles of ancillary jurisdiction or supplemental jurisdiction, this Court has supplemental jurisdiction over the claims set forth herein pursuant to Title 28, United States Code, Section 1367(a).  As such, this Court has subject matter jurisdiction over this action.

11.     Mr. Rivero was appointed as Receiver in this District; the instant Complaint is brought to accomplish the objectives of the Receivership Order and the Asset Freeze Order; and the property sought by Receiver is located in this district.

12.     This Court has personal jurisdiction over Empire because it conducted business with and/or received funds from Receivership Entities, which were operating, conducting, engaging in, and carrying on a fraudulent business or business venture in, among other locations, the Southern District of Florida. The transfers that Empire received from the Receivership Entities were proceeds from Wells' fraudulent scheme conducted from the Southern District of Florida.

13.     This Court has personal jurisdiction over Empire because Empire is registered to do business in Florida with the Florida Secretary of State, has its principal place of business in Hallandale, Florida, regularly conducts business in Florida, and transacted business with the Receivership Defendants in Florida.

14.     By virtue of these actions, Empire has sufficient minimum contacts with Florida and otherwise intentionally avails itself of the protections and benefits of Florida law such that

4

maintaining this action in Florida does not offend traditional notions of fair play and substantial justice.

15.     Venue is proper in the Southern District of Florida pursuant to Title 28, United States Code, Sections 754 and 1692, because this action is brought to accomplish the objectives of the Receivership Order and the Asset Freeze Order and is therefore ancillary to the Court's exclusive jurisdiction over the Receivership Estate.  Further, the Transfers and other acts described in this Complaint were made from, or occurred in the Southern District of Florida, and some victims of the underlying scheme described in the SEC Action were located in the Southern District of Florida.

### THE RECEIVER'S STANDING TO BRING THE CLAIMS ASSERTED

16.     The Receiver has standing to bring the claims asserted in this Complaint pursuant to the Receivership Order.  *See* ECF No. 11 at Section II, ¶ 7(I).  The Receivership Order authorizes and empowers the Receiver to "bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver. . .". *Id*.

17.     Additionally, the Receivership Order authorizes the Receiver to: "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property." *Id.* at Section X, ¶ 36.

18.     Included among such actions are fraudulent transfer actions and unjust enrichment actions to recover for the benefit of the Receivership Estate amounts that Receivership Entities fraudulently transferred to third parties.

19.     The Receiver as a "creditor", and on behalf of the "creditors", of the Receivership Entities, as defined in Fla. Stat. § 726.102, has standing to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act, Florida Statutes Section 726.101, *et seq*. ("FUFTA"), and common law unjust enrichment pled in the alternative.

20.     Applicable case law also confers standing on the Receiver to bring the fraudulent transfer claims asserted in this Complaint under the Florida Uniform Fraudulent Transfer Act seeking to redress the wrongs committed to Wells by its management in making the fraudulent transfers.  *See Wiand v. Lee*, 753 F. 3d 1194, 1202 (11th Cir. 2014).

21.     Finally, the Receiver has standing to bring this action pursuant to 28 U.S.C. § 754, which provides that "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof [and] shall have capacity to sue in any district without ancillary appointment[.]" As set forth above, the Receiver has complied with the requirements set forth in 28 U.S.C. §§ 754 and 1692.

## STATUTE OF LIMITATIONS AND APPLICABLE LAW

22.     This action is brought within the pertinent statutory limitations period. Section 726.110 of FUFTA provides a four-year period to seek to avoid and recover transfers from the date the transfer was made or, if later, within one year after the transfer was or could reasonably have been discovered by the claimant.

23.     Upon his appointment on August 14, 2024, the Receiver immediately began collecting documents including financial records, bank statements, wire transfer details, cancelled checks and business records for the Receivership Entities. The Receiver then promptly forwarded those documents to his forensic accountants who conducted a forensic accounting

analysis of the transfers that the Receivership Entities made to third parties. The Receiver obtained and reviewed that forensic analysis and gained knowledge of the Receivership Entities' transfers to Defendant.

24.     The Receiver did not and could not have discovered the facts constituting the Receivership Entities' misconduct until after his appointment as Receiver in the SEC Action on August 14, 2024. And, the Receivership Entities could not have stopped Bingham's or the Receivership Defendants' misconduct until it was out from under Bingham's adverse dominion and control upon the Receiver's appointment. Thus, the claims asserted here did not accrue until the date of the Receiver's appointment and any applicable statutes of limitations were tolled until such date. The Receiver now brings this lawsuit less than one year from the date on which he was appointed.

25.     The Receiver also seeks to avoid and recover constructive fraudulent transfers under section 726.105(1)(b) of FUFTA that were made to Defendant within the four-year period prior to the date upon which the Receiver filed this Complaint.

26.     The Receiver seeks damages for unjust enrichment under Florida common law for the transfers made to Defendant within the four-year period prior to the date upon which the Receiver filed this Complaint.

### FACTUAL ALLEGATIONS

### I.     Wells' Real Estate Investment Scheme

27.     Janalie Bingham organized Wells in 2017 as a Wyoming Limited Liability Company with its principal place of business in West Palm Beach, Florida. Bingham served as Wells' Chief Executive Officer and was its' sole member.

28.     Jean Joseph is Bingham's husband and maintained operational control with Bingham over the rest of the Receivership Entities, including Wells. Joseph is a felon who was

7

previously convicted of wire fraud and sentenced to 15 months in prison and was thereafter placed on three years of supervised release.

29.     From at least January 2020 to at least May 2024 (the "Relevant Period"), Bingham and Joseph used Wells, and in some instances the other Receivership Entities, to raise at least $56 million from at least 660 investors located across the country through a fraudulent offering of promissory notes, and misrepresenting that Wells has a real estate portfolio amounting to $450 million in an effort to solicit individual investors to buy into Wells' real estate development programs (the "Fraudulent Scheme").

30.     Through Wells, Bingham and Joseph developed a network of sales agents to assist them with misrepresenting to investors the true nature of Wells' real estate portfolio. In reality, the Receivership Entities' bank records—over which Bingham had sole control—together with the relevant property records, demonstrated that Wells and the Receivership Entities had acquired 34 properties valued at approximately $46 million at the time of acquisition.

31.     Publicly available property records reveal that the majority of these properties are heavily encumbered with mortgages, and it appears that the balance of the purchase prices were paid for with investor funds.

32.     By the time the Receiver was appointed, most of the properties had defaulted on their mortgages and were in the midst of foreclosure proceedings. In addition to mortgage lenders, many of the properties also were indebted either to Condominium Associations or Homeowner Associations.

33.     Through Wells, Bingham and Joseph also misrepresented the properties' ability to generate income. According to Wells' promotional materials, income generated from the properties was to be used to provide the investors' return on their notes. However, the real

8

properties generated little to no income and any income was insufficient for Wells to pay promised returns to investors.

34.     As a result, Wells, through its sales agents, procured and relied on collecting and soliciting additional investor funds to make interest payments to existing investors in a Ponzi-like fashion. Specifically, Wells had a net cash outflow of roughly $23 million, and, since January 2020, the Receivership Defendants diverted approximately $10 million of investor funds to make Ponzi-like interest payments to existing investors and to satisfy Note redemptions.

35.     Bingham and Joseph transferred at least $28 million of investor funds to brokerage firms, where they engaged in speculative options trading and lost roughly $12 million of investor funds. Bingham and Joseph also used $6.8 million of investor funds to pay undisclosed commissions to sales agents and make interest payments and redemptions to investors. Bingham and Joseph also misappropriated roughly $1.8 million for personal expenses and transferred at least $1.9 million of Wells-financed real estate to Bingham. None of the above material facts were disclosed to investors, nor did Bingham and Joseph disclose that Joseph, a convicted felon on supervised release, was a principal of Wells.

36.     The Ponzi scheme commenced at the latest in 2020 when Wells began paying interest and principal payments on Notes using the funds of newer investors.

37.     Based on the SEC's and the Receiver's analysis of Wells' operations and records, Wells' business model, as implemented by Bingham and Joseph, was not sustainable, feasible, or profitable.

## II.     Findings of Fraud and Permanent Injunction Against Wells in the SEC Action

38.     As a result of this fraudulent conduct, and the activity explained in further detail in the SEC's complaint, the SEC commenced the SEC Action against the Receivership Defendants

9

that resulted in entry of the Asset Freeze Order and Appointment Order containing preliminary findings that the Receivership Defendants likely participated in a fraudulent securities scheme.

39.     In addition, in the SEC Action, this Court entered judgments with permanent injunctive relief against the Receivership Defendants enjoining the Receivership Defendants from violating several provisions of the Securities Act and the Exchange Act  (the "Consent Judgments"). *See* SEC Action ECF Nos. 71, 81, and 83.

40.     At all times, Bingham and Joseph controlled and operated the Receivership Entities as a means to carry out the Fraudulent Scheme, thereby causing the Receivership Entities to commit the above-listed violations of federal securities laws and rules, in a breach of their fiduciary duties to the Receivership Entities.

41.     At all times, Receivership Entities were under the control of Bingham and Joseph until the appointment of the Receiver and accordingly could not seek recovery of the fraudulent transfers prior to that point. Moreover, the Receiver was not authorized to pursue recovery of the fraudulent transfers until entry of the Receivership Order on August 14, 2024.

42.     Receivership Entities made the transfers at Bingham and Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of the Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

   **III.     The Insolvency of Wells and the Receivership Defendants**

43.     As a result of operating the Fraudulent Scheme, the Receivership Entities were insolvent, undercapitalized, and operating at a loss. During all relevant times, the Receivership Entities did not have sufficient assets to pay their debts to individual investors and creditors as those debts became due.

10

44. Because most of the Wells investors have not received the return of their investment or all of the amounts due to them under the Wells Notes, these investors will have significant claims against the Receivership Estate to recover their investments

**IV.     Transfers to Empire**

45. From September 30, 2022, through September 29, 2023, Receivership Entities made approximately 16 transfers to Empire in the total amount of $101,064.42. The Transfers originated from Receivership Entities' bank accounts located in Florida (collectively, the "Transfers"). *See* Summary of the Transfers, attached as **Exhibit A**.

46. The funds comprising the Transfers to Empire were funds that Receivership Defendants fraudulently procured from investors and/or creditors in the form of investments, fees, and/or other payments made in connection with the Notes.

47. Empire received the Transfers without providing reasonably equivalent value to any of the Receivership Entities in exchange for those Transfers.

48. The purported purpose of the Transfers was to pay insurance "fees" or "premiums." In reality, the insurance coverage was nonexistent, grossly overpriced or unnecessary and unrelated to the business. As such, the Transfers were not made for any reasonably equivalent value but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

49. When the Receivership Entities made the Transfers to Empire, the Receivership Entities intended to incur or believed or reasonably should have believed that they would incur, debts beyond their ability to pay them as they became due.

50.     Thus, Receivership Entities had the actual intent to delay, hinder, or defraud investors and creditors, and made the Transfers to delay, hinder, or defraud investors and creditors.

51.     Empire assisted the Receivership Defendants in carrying out the Fraudulent Scheme by allegedly securing insurance coverage for real properties owned by Receivership Entities, which in reality were nonexistent, grossly overpriced, or unnecessary or unrelated, and received the Transfers as payment for "fees" or "premiums", without providing reasonably equivalent value to the Receivership Entities in exchange for those Transfers.

52.     The Receivership Entities, and thereby the Receivership Estate, have been damaged significantly as a direct and proximate result of the Transfers made to Empire. Such damages include, but are not limited to, losses due to the dissipation of investor and customer funds for which no reasonably equivalent value was provided and other and further compensatory and consequential damages.

53.     Accordingly, the Receiver brings the instant action to collect monies that were improperly transferred, dissipated, misappropriated, or lost from the Receivership Entities as a result of the fraudulent transfers to, and unjust enrichment of Empire.

54.     Because Receivership Entities were operated from Florida, the transactions with Defendant were carried out in Florida, and the Transfers came from bank accounts located in Florida, Florida law applies to the claims brought in this Complaint.

55.     All conditions precedent to the bringing of this action have been performed or satisfied or have occurred.

### COUNT I
### Fraudulent Transfer under § 726.105(1)(a), Fla. Stat.,
### Florida Uniform Fraudulent Transfer Act

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint:

56.     This is a claim to avoid and recover a fraudulent transfer pursuant to Florida Statutes Section 726.105(a)(1).

57.     As detailed above, Receivership Entities made Transfers to Defendant.

58.     Defendant received the Transfers from Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

59.     Any services that Defendant may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendant did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors

60.     At the time that Receivership Entities made the Transfers, Receivership Entities were operating a Fraudulent Scheme, were insolvent, and were engaged in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

61.     When Receivership Entities made the Transfers to Defendant, the Receivership Entities intended to incur or believed or reasonably should have believed that it would incur debts beyond its ability to pay them as they became due.

62.     Receivership Entities made the Transfers in furtherance of that Fraudulent Scheme and Ponzi scheme.

63.     At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

64.     Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities.

65.     Thus, Receivership Entities had the actual intent to delay, hinder, or defraud creditors, and made the Transfers to delay, hinder, or defraud creditors.

66.     Consequently, the Transfers were inherently fraudulent pursuant to Florida Statutes Section 726.105(1)(a).

67.     Because the Transfers were fraudulent under Florida Statutes Section 726.105(1)(a), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

68.     As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendant, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

Wherefore the Receiver respectfully requests that the Court enter judgment against Defendant: (1) determining that the Transfers from Receivership Entities to Defendant were fraudulent and avoiding those Transfers; (2) entering a money judgment against Defendant in the full amount of the Transfers to Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

14

## COUNT II
### Fraudulent Transfer under § 726.105(1)(b), Fla. Stat., Florida Uniform Fraudulent Transfer Act

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint:

69.     This is a claim to avoid and recover a fraudulent transfer pursuant to Florida Statutes Section 726.105(1)(b).

70.     As detailed above, Receivership Entities made the Transfers to Defendant.

71.     Defendant received the Transfers from Receivership Entities without providing reasonably equivalent value in exchange for the Transfers.

72.     Any services that Defendant may have provided to Receivership Entities only facilitated and perpetuated the fraud against current investors and recruiting new investors. Thus, Defendant did not provide any reasonably equivalent value or any other benefit to Receivership Entities but rather increased the damages suffered by Receivership Entities by increasing the amounts owed to investors and creditors.

73.     Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendant, as detailed above.

74.     At the time that Receivership Entities made the Transfers to Defendant, Receivership Entities were operating a Fraudulent Scheme, were insolvent, and were engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

75.     Receivership Entities made the Transfers in furtherance of that Fraudulent Scheme and Ponzi scheme

15

76. At the time that Receivership Entities made the Transfers, Bingham and/or Joseph removed and/or concealed assets of Receivership Entities from the reach of its investors and/or creditors.

77. Receivership Entities made the Transfers at Bingham's and/or Joseph's direction, as a result of their fraudulent domination, adverse interest in, and control of Receivership Entities and as part of their continued breaches of their fiduciary duties to Receivership Entities

78. When Receivership Entities made the Transfers to Defendant, Receivership Entities intended to incur or believed or reasonably should have believed that they would incur, debts beyond its ability to pay them as they became due.

79. Because the Transfers were fraudulent under Florida Statutes Section 726.105(1)(b), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

80. As a direct and proximate result of Receivership Entities' fraudulent Transfers to Defendant, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

Wherefore the Receiver respectfully requests that the Court enter judgment against Defendant: (1) determining that the Transfers from Receivership Entities to Defendant were fraudulent and avoiding those Transfers;  (2) entering a money judgment against Defendant in the full amount of the Transfers to Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## COUNT III
### Fraudulent Transfer under § 726.106(1), Fla. Stat., Florida Uniform Fraudulent Transfer Act

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint:

81.     This is a claim to avoid and recover fraudulent transfers, pursuant to Florida Statutes Section 726.106(1).

82.     As detailed above, Receivership Entities made the Transfers to Defendant.

83.     Defendant received the Transfers without providing reasonably equivalent value in exchange for the Transfers.

84.     Receivership Entities did not receive reasonably equivalent value in exchange for the Transfers to Defendant, as detailed above. Indeed, Defendant made no payments and provided no other value to Wells or the Receivership Estate.

85.     And the services that Defendant purported to provide to Receivership Entities or the Receivership Estate did not provide any value to the Receivership Entities because they only facilitated the Fraudulent Scheme. All the funds that Defendant received from the Receivership Entities were derived from the investors that Receivership Defendants had defrauded. Therefore, Defendant profited from Receivership Defendants' Fraudulent Scheme at the expense of the investors that the Receivership Defendants defrauded.

86.      Receivership Entities had creditors whose claims arose before Receivership Entities made the Transfers to Defendant.

87.     When Receivership Entities made the Transfers to Defendant, the assets remaining in Receivership Entities' business were unreasonably small in relation to the business or transaction.

88.     When Receivership Entities made the Transfers to Defendant, Receivership Entities were operating a fraudulent scheme and thus intended to incur or believed or reasonably should have believed that it would incur, debts beyond its ability to pay them as they became due.

89.     Because the Transfers are fraudulent under Florida Statutes Section 726.106(1), the Receiver may avoid the Transfers, pursuant to Florida Statutes Section 726.109(2).

90.     As a direct and proximate result of the Transfers to Defendant, the Receivership Estate has been diminished in the amount of the Transfers, and the remaining assets of the Receivership Estate are insufficient to pay the Receivership Estate's debts and liabilities, including, most notably, the claims of the  individual investors and creditors who were defrauded by Bingham, Joseph, and the Receivership Entities.

Wherefore the Receiver respectfully requests that the Court enter judgment against Defendant: (1) determining that the Transfers from Receivership Entities to Defendant were fraudulent and avoiding those Transfers;  (2) entering a money judgment against Defendant in the full amount of the Transfers to Defendant, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

## **COUNT IV**
### **Unjust Enrichment as to the Transfers**

The Receiver re-alleges and incorporates by reference the allegations in paragraphs 1 through 55 of this Complaint:

61.     Receivership Entities conferred a benefit on Defendant when they made the Transfers to Defendant, all of which were derived from defrauded investors of the Fraudulent Scheme.

62. Defendant had knowledge of the benefit it received from the Receivership Entities because of the Transfers and voluntarily accepted and retained the benefit conferred.

63. It is inherently unfair and inequitable that the funds of investors defrauded in the Receivership Defendants' Fraudulent Scheme are retained by and used to personally benefit Defendant, rather than being returned to the Receivership Estate for the benefit of all of the defrauded investors.

64. As a direct and proximate result of Defendant's retention of the Transfers that the Receivership Entities fraudulently transferred to Defendant, the Receivership Estate has been diminished, and, under the circumstances, equity dictates that Defendant should return the funds it received from the Receivership Entities, and any assets it may have acquired with those funds, to the Receiver for the benefit of all of the defrauded investors.

Wherefore the Receiver respectfully requests that the Court enter judgment against Defendant: (1) determining that Defendant was unjustly enriched by virtue of its receipt of the Transfers which they received from the Receivership Entities; (2) entering a money judgment against Defendant, in the full amount of the Transfers it received, and, if necessary, imposing a constructive trust and/or equitable lien on the funds or other assets traceable to such Transfers; (3) awarding the Receiver damages, costs, and interest; and (4) granting such other and further relief as may be just and proper.

<b><u>DEMAND FOR JURY TRIAL</u></b>

The Receiver demands trial by jury on any and all issues in this action triable by a jury.

Dated: August 13, 2025                              Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for the Receiver*

2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

By: /s/ *Amanda Fernandez*
    Amanda Fernandez
    Fla. Bar No. 106931
    afernandez@riveromestre.com
    Jorge A. Mestre
    Fla. Bar No. 88145
    jmestre@riveromestre.com
    Taylor Diaz
    Fla. Bar No. 1040706
    tdiaz@riveromestre.com